IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

DAVID I. NAMER                                          PETITIONER
Reg. #15869-034

V.                            NO. 2:12CV00143 SWW-JTR

JOHN FOX,                                               RESPONDENT
Interim Warden, FCI-Forrest City

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Room A149
Little Rock, AR 72201-3325

## I. Introduction

David I. Namer is an inmate in the Federal Correctional Institution in Forrest City, Arkansas (FCI-FC). In his pending 28 U.S.C. § 2241 Petition for a Writ of

Habeas Corpus, he challenges: (1) a prison disciplinary conviction he received at FCI-FC on October 5, 2011 for "failing to stand count"; and (2) the Bureau of Prison's (BOP) imposition of a restitution payment plan.[1] (Docket entries #2, #7.)[2]

Respondent has filed two Responses (docket entries #12, #20), and the issues are now joined and ready for disposition. The Court will analyze each of Petitioner's habeas claims separately.[3]

---

[1]Petitioner was convicted, in the United States District Court for the Western District of Tennessee (Memphis), of 93 counts of conspiracy, securities fraud, mail fraud, wire fraud, money laundering, and tax evasion. *United States v. David I. Namer*, W.D. Tenn. No. 2:00CR20176-01-BBD (electronically accessed) (*Namer I*). He was sentenced to 350 months of imprisonment and ordered to pay restitution of $32,720,000. *Id.* at docket entry #562.

On appeal, the Sixth Circuit Court of Appeals affirmed the convictions, but remanded for resentencing in light of *United States v. Booker* 543 U.S. 220 (2005). *United States v. Namer*, 149 F. App'x 385 (6th Cir. 2005), *cert. denied*, 547 U.S. 1104 (2006) (*Namer II*). The district court resentenced Petitioner to 240 months of imprisonment, but made no change in the amount of restitution he was required to pay. *Namer I*, at docket entries #681-#682.

[2]In support of these two habeas claims, Petitioner has filed various pleadings and motions. (Docket entries #3, #5, #13-#17, #19, #21-#23.)

[3]Respondent argues that both of Petitioner's claims should be dismissed for failure to fully and properly exhaust the BOP's administrative remedies. Petitioner argues, at length, that the BOP has thwarted his attempts to exhaust and that further efforts would be futile. The Court need not resolve the exhaustion issues because, as explained below, Petitioner's claims fail for other reasons. *See Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (addressing merits of federal prisoner's claims despite alleged failure to exhaust administrative remedies because the exhaustion prerequisite for a § 2241 petition was "judicially created, not jurisdictional").

## II. Discussion

### A.    Petitioner's § 2241 Challenge to His October 5, 2011 Disciplinary Conviction.

According to Petitioner, he underwent a knee operation in August 2011, and then, in September 2011, underwent hospitalization for a concussion and, later, shoulder surgery. He returned to FCI-FC on September 22, 2011, but continued to suffer from knee and shoulder pain, headaches, dizziness, nausea, vertigo and sleep deprivation. (Docket entry #2, at 2, 9.)

On October 2, 2011, Officer N. Alston was conducting the 9:45 p.m. count in Petitioner's housing unit. She found Petitioner "still in the bed asleep," and "had to pull the covers to wake [him] for count."[4] (Docket entry #20-1, at 8.) Officer Alston wrote an incident report charging Petitioner with "failing to stand count."[5] (*Id.*)

On October 3, 2011, Lt. C. Chatters, the investigating officer, notified Petitioner of the disciplinary charge and advised him of his rights in the forthcoming disciplinary proceedings. Lt. Chatters reported that Petitioner displayed "a poor

_____

[4]Officer Alston stated that she had counseled Petitioner on three other occasions for interrupting the taking of count. In her last counseling with Petitioner, she had warned him that, if he interrupted count again, he would receive an incident report. (Docket entry #20-1, at 8.)

[5]According to Petitioner, on October 2, 2011, he did not hear Officer Alston calling count and had not set his alarm because "of the Jewish Holy Day and because of the Shabbat." (Docket entry #2, at 9.)

attitude" and said: "Lieutenant, listen, I have had surgery on my arm and it's hard for me to get up for count. I never told the officer that I wouldn't get up. I have medical issues and it should be considered." Lt. Chatters noted that 9:45 p.m. was "an official stand up count," and that Petitioner had submitted no medical documentation to excuse him from standing for count. (*Id.* at 8-9.)

On October 5, 2011, the Unit Discipline Committee (UDC) considered the disciplinary charge. Petitioner told the UDC: "It did occur two other times. When they woke me up I did stand for count and apologized. On this particular occasion I did not stand until they woke me." The UDC found that Petitioner had committed the prohibited act of failing to stand count, and imposed a sanction of thirty days loss of commissary privileges.[6] As the basis for its decision, the UDC cited the officer's report that Petitioner was "laying in bed asleep and not standing for count." (*Id.* at 8.)

On October 24, 2011, Petitioner appealed the UDC's decision to the FCI-FC warden, who denied relief. Petitioner appealed to the Regional Director's office, which reviewed the evidence supporting the disciplinary action and then denied his request for relief. Petitioner then appealed to the Office of General Counsel, where

---

[6]The UDC dismissed a second charge of "interfering with the taking of count," because it was "closely related" to the first charge. (Docket entry #20-1, at 8.)

his appeal was rejected as untimely. (Docket entries #12-1, at 4-5, 19-20, 22; #3, at 12-17; #13, at 4.)[7]

## 1.    Petitioner's Claims.

In his habeas papers, Petitioner argues that the disciplinary conviction should be "expunged" from his record because it:

(1)    Violated his equal protection rights and constituted selective enforcement of the rules based on his medical condition, race and religion;

(2)    Was vindictive and discriminatory based on his Jewish beliefs;

(3)    Was in retaliation for Petitioner's previous complaints about Lt. Chatters and for Petitioner's statement that he was going to file an assault complaint against Officer Alston for violently pulling off the covers and hurting his shoulder;

(4)    Violated BOP policy which requires an internal affairs investigation where there is an allegation of staff abuse;

(5)    Violated his due process rights, by: (a) denying him the ability to provide exculpatory medical records; (b) not giving him sufficient notice of the hearing and time to prepare a defense; and (c) denying him the opportunity to have a staff representative; and

(6)    Violated his Eighth Amendment rights, by imposing punishment that was disproportionate to the offense and based solely on his medical condition.

---

[7]Respondent submitted additional disciplinary documents as attachments to the Declaration and Supplemental Declaration of Robert A. Clark, Jr., Senior Attorney Advisor with the BOP Consolidated Legal Center. (Docket entries #12-1, at 2-6, 17-22; #20-1, at 2-10.) Petitioner submitted additional documents regarding his administrative appeals. (Docket entries #3, at 5-17; #13, at 3-4.)

(Docket entries #2, at 3-5; #7, at 6-8.)

## 2.   Analysis of Disciplinary Conviction Claims.

To prevail on his equal protection claim, Petitioner must demonstrate that: (1) he was treated differently from similarly situated inmates; (2) the differential treatment was based upon either a suspect classification or a fundamental right;[8] and (3) the treatment was motivated by intentional or purposeful discrimination. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815-16 (8th Cir. 2008). Although he alleges that Officer Alston and Lt. Chatters discriminated against him because he is Jewish,[9] he has not alleged or established that they treated him differently from any similarly situated inmates, much less that any differential treatment was motivated by his

---

[8]Race and religion are suspect classifications. *Patel*, *infra*, 515 F.3d at 816; *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006). Petitioner's "medical condition" is not.

[9]Specifically, he *now alleges* that Officer Alston, the charging officer, "rudely" told him he should have set his alarm clock to wake for count, even though Petitioner told the officer that he was proscribed from setting an alarm "because of the Jewish Holy Day and ... the Shabbat." Petitioner also alleges that Lt. Chatters, the investigating officer, had previously ordered him to stop saying grace after meals, a Jewish practice. After complaining to the captain and warden, Petitioner was given permission to say grace after meals, but, when he continued the practice, Lt. Chatters "stood over [him], menacingly and intimidatingly." Finally, Petitioner alleges that, after he received the incident report for failing to stand count, Lt. Chatters said it was "her turn" and she would "make sure that this sticks." Thus, he concludes that both officers "discriminated against [him] on the basis of being Jewish." (Docket entry #2, at 4, 9, 12.)

However, in his administrative appeals of the disciplinary decision, Petitioner did not raise any allegations of religious discrimination. (Docket entry #3, at 13, 17.)

religion or an intentional and discriminatory purpose. Furthermore, prison officials may treat inmates differently, based on their religious practices, as long as those actions are "necessary to further legitimate penological interests." *Id.* at 816; *Rouse v. Benson*, 193 F.3d 936, 942-43 (8th Cir. 1999). Requiring prisoners to stand for count is reasonably related to legitimate penological goals of maintaining safety and security in the prisons, and Petitioner has not presented any evidence that this requirement was not equally applied to prisoners of different religious faiths.

The Eighth Circuit has made it clear that a habeas claim challenging a retaliatory disciplinary fails if the underlying disciplinary was based on a prisoner's *actual violation of a prison rule* and "some evidence" supports the violation. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). In the prison disciplinary context, "some evidence" has been construed to mean "*any* evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added). Prison officials can permissibly rely solely on officer violation reports to find inmates guilty of disciplinary infractions. *Id.* at 456; *Hartsfield*, 511 F.3d at 831. Even if the officer's report is disputed by the inmate and supported by no other evidence, it legally suffices as "some evidence," if the violation is decided during a disciplinary hearing conducted by an impartial decision-maker. *Hartsfield*, 511 F.3d at 831.

In this case, Officer Alston reported that Petitioner failed to stand for count, and, on three previous occasions, she had counseled him for the same conduct. Although Petitioner offered several excuses for his conduct, they were rejected by the charging officer, the investigating officer, the UDC, the warden, and the Regional Director's office. Because this easily satisfies *Hill*'s "some evidence" standard, Petitioner's claim that the disciplinary was retaliatory fails.

Petitioner can only successfully maintain a due process challenge to his disciplinary conviction if he can establish that he has a liberty interest at stake. *Sandin v. Conner*, 515 U.S. 472, 487 (1995); *Phillips v. Norris*, 320 F.3d 844, 846-47 (8th Cir. 2003). He argues that a liberty interest was created because the disciplinary decision was used to impose a "management variable," which has prevented him from being transferred to a lower security level facility. To the contrary, the Supreme Court has explicitly held that a prisoner has no constitutionally protected right to placement in any particular institution, even though the degree of confinement in one facility may be quite different from that in another. *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25, 228 (1976).

In the same vein, courts have held that a prisoner does not have a liberty interest arising from *temporarily* losing privileges. *Sandin*, 515 U.S. at 484 (holding that the due process clause applies only when prison officials impose an "atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Phillips*, 320 F.3d at 847 (holding that segregation and thirty-seven days loss of privileges of contact visitation, exercise, and chapel, did not subject a prisoner to an atypical and significant hardship under *Sandin*); *Kennedy v. Blankenship*, 100 F.3d 640, 642-43 (8th Cir. 1996) (holding that thirty days in punitive segregation, which included the suspension of mail, telephone, visitation and commissary privileges, was not an atypical and significant hardship).

Here, Petitioner's only sanction was the loss of thirty days of commissary privileges. Under *Sandin*, this is *not* an atypical and significant hardship in the context of normal prison life. Thus, this thirty-day sanction did not give rise to a liberty interest and cannot provide a basis for Petitioner's claims of due process violations that occurred in connection with his disciplinary conviction.

Finally, Petitioner argues that the BOP failed to follow its own policies, and, as a result, his due process rights were violated. However, under well-established Eighth Circuit case law, a prison's failure to follow its own regulations, standing alone, does not create a liberty interest capable of supporting a due process claim. *Phillips*, 320 F.3d at 847; *Kennedy*, 100 F.3d at 641, 643. Thus, Petitioner has failed to state a viable due process claim arising from his disciplinary conviction and appeals.

Petitioner's last claim is that his disciplinary punishment was so disproportionate to the offense that it violates the Eighth Amendment. On its face, Petitioner's loss of commissary privileges for thirty days was not "cruel and unusual punishment," *i.e.*, it clearly did not involve an unnecessary or wanton infliction of pain, involving a deprivation of "life's necessities," such as water, food or shelter, and it clearly did *not* rise to the level of deliberate indifference to his health or safety. *Phillips*, 320 F.3d at 848. Finally, the punishment was well within the limits prescribed for his offense. *See* 28 C.F.R. § 541.3 (failing to stand count [Code 320] is a "moderate severity level prohibited act," for which available sanctions are forfeiture or disallowance of up to thirty days of good conduct time, up to three months of disciplinary segregation, and loss of visiting, telephone, commissary, movies and recreation privileges).

Accordingly, all of Petitioner's habeas claims challenging his October 5, 2011 disciplinary conviction should be dismissed, with prejudice.

**B.      Petitioner's § 2241 Challenge to the BOP's Imposition of a Restitution Payment Plan.**

The Amended Judgment, entered in the Western District of Tennessee, required Petitioner to satisfy the following restitution obligation: (1) pay $32,720,000, plus interest, unless paid in full before the fifteenth day after entry of judgment, pursuant

to the Mandatory Victims Restitution Act of 1996 (MVRA);[10] and (2) pay monetary penalties "in accordance with the *schedule of payments set forth in the Schedule of Payments*." (Emphasis added.) A copy of the Amended Judgment, marked Exhibit 1, is attached to this Recommended Disposition.

For unknown reasons, no "schedule of payments" was ever attached to the Amended Judgment.[11] However, during Petitioner's sentencing, the district judge explicitly stated that she was "going to impose [full] restitution and make that due and payable immediately":

> ... I am aware that given the length of the – the sentence that the court is imposing with respect to Mr. Namer, and given his age it is unlikely that he will be able to make full restitution, but the court is going to impose that restitution. And once Mr. Namer gets out, the Probation Department will monitor his ability to pay, and after he's gotten out and served his supervised release, he can work with probation and can petition the court to adjust that in the event that the court finds that he is unable to pay that amount of restitution. **But the court is going to impose that restitution and make that due and payable immediately**.

A copy of the relevant portion of Petitioner's May 6, 2003 sentencing, marked Exhibit 2, is attached to this Recommended Disposition. However, the trial court did

---

[10] 18 U.S.C. § 3663, *et seq.*

[11] *See Namer I, supra.* The Clerk's office in the Western District of Tennessee has confirmed that, except for the redaction of personal identifying information, the July 31, 2007 Amended Judgment (*id.* at docket entry #682) is identical to the sealed Amended Judgment of the same date (*id.* at docket entry #681), and that no schedule of payments is attached to either. The Clerk's office has also confirmed that no schedule of payments is attached to the original Judgment dated May 30, 2003 (*id.* at docket entry #562).

not address how – or if – restitution would be paid during Petitioner's incarceration.

On August 14, 2003, Petitioner was committed to the BOP. (Docket entry #12-1, at 9.) Between 2003 and August 8, 2012, it appears Petitioner made restitution payments totaling $780.[12]

On February 23, 2012, Petitioner signed a BOP form agreeing to make monthly restitution payments of $30. (Docket entry #20-1, at 37.) On August 9, 2012, he agreed to increase these monthly restitution payments to $45. (*Id.* at 35.)

On May 18, 2012, Petitioner filed an administrative remedy request challenging the BOP's collection of restitution payments, but was unsuccessful at all levels of the BOP's administrative review and appeal process. (*Id.* at 4-5, 13.)

In this habeas action, Petitioner argues that only the trial court had the authority to establish his restitution payment schedule, because it is a "core judicial function" that cannot be delegated to the BOP. Because the Amended Judgment did not contain a restitution payment schedule, Petitioner contends that: (1) the Amended Judgment is "not valid and not enforceable"; and (2) Respondent has no authority to impose a restitution payment schedule and collect payments from him. He further asserts that

---

[12]The Amended Judgment required Petitioner to pay $32,720,000. As of August 9, 2012, Petitioner owed $32,719,220 in restitution. (Docket entry #20-1, at 36.) Thus, it appears that, during the first nine years of his incarceration, he paid a total of $780 in restitution.

the BOP is usurping the sentencing court's constitutional authority and crafting its own schedule for collecting restitution through the Inmate Financial Responsibility Program (IFRP).[13] (Docket entries #2, at 5-7; #7, at 7; #23, at 3-4.)

The Sixth Circuit, where Petitioner was convicted and sentenced, follows the majority view that the sentencing court *cannot* delegate to the BOP the duty of setting a prisoner's schedule for making payments of restitution. *United States v. Davis*, 306 F.3d 398, 425-26 (6th Cir. 2002) ("[T]he MVRA expressly states that 'the court shall ... specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid,' and in doing so shall consider the factors delineated in the provision. ... [we] believe that the district court in the instant case erred in failing to set Defendant's restitution payment schedule.").

The Eighth Circuit, where Petitioner is currently incarcerated, also follows the majority view that the MVRA requires the sentencing court to set a detailed payment schedule at the time of sentencing. *McGlothlin*, 249 F.3d at 784-85 (when defendant asked to be allowed to begin paying his restitution once he secured a job in prison, district court said he would "let the [BOP] tackle that problem" and ordered that

---

[13]The MVRA allows the sentencing court "substantial discretion" in determining how restitution is to be paid, and the offender's ability to pay is relevant in determining whether restitution should be paid in a single lump-sum payment, in periodic installments, or on some other payment schedule. *United States v. McGlothlin*, 249 F.3d 783, 784 (8th Cir. 2001); *see* 18 U.S.C. §§ 3664(f)(2), 3572(d)(2).

payment was due immediately; because the district court ordered immediate payment when it was not feasible, due to defendant's financial circumstances, the case was remanded with instructions that the trial court fashion "a detailed restitution payment schedule to commence while McGlothlin is incarcerated").[14]

Based on *McGlothlin* and similar decisions from other circuits, Petitioner argues that this Court must order Respondent to cease collection of restitution payments "until a validly issued restitution order is issued by the [trial] court." (Docket entry #7, at 8.)

As a threshold matter, the Court notes that Petitioner *did not* challenge the validity of the sentencing court's restitution order in his direct appeal to the Sixth Circuit. *See Namer II*, *supra*. Had he done so, Sixth Circuit precedent would have

_____

[14]*Accord United States v. Kinlock*, 174 F.3d 297, 301 (2d Cir. 1999); *United States v. Corley*, 500 F.3d 210, 228 (3d Cir. 2007); *Ward v. Chavez*, 678 F.3d 1042, 1051-52 (9th Cir. 2012); *United States v. Overholt*, 307 F.3d 1231, 1256 (10th Cir. 2002); *United States v. Prouty*, 303 F.3d 1249, 1254-55 (11th Cir. 2002); *but see United States v. Dawkins*, 202 F.3d 711, 716 (4th Cir. 2000) (court "effectively discharged its responsibility to set a payment schedule," even though ordered immediate payment of restitution and only addressed installments to be paid after release from incarceration); *Schmidt v. United States*, 34 F. App'x 151, *1 (5th Cir. 2002) (no unconstitutional delegation of judicial authority where judgment set amount of restitution but did not specify manner, timing or method of payment during incarceration); *United States v. Sawyer*, 521 F.3d 792, 794-96 (7th Cir. 2008) (criminal judgment need *not* contain schedule of restitution payments to be made during incarceration, and "payments until release should be handled through the [IFRP] rather than the court's auspices"); *United States v. Baldwin*, 563 F.3d 490, 492 (D.C. Cir. 2009) (sentencing court is not delegating its authority when it leaves it up to the BOP to determine the amount and schedule of restitution to be paid during incarceration).

required a remand for the sentencing court to specify a schedule of payments. *See Davis*, 306 F.3d at 426; *United States v. Geedi*, 490 F. App'x 755, 760 (6th Cir. 2012) (No. 11-3275) (remanding per *Davis* where district court determined amount of restitution owed but did not specify the manner or schedule of payments); *United States v. Sorrell*, 73 F. App'x 138, 139 (6th Cir. 2003) (remanding per *Davis* because district court did not establish a schedule for making restitution payments or specify the manner in which restitution was to be paid).

Similarly, Petitioner *did not* raise the restitution issue in a 28 U.S.C. § 2255 motion requesting the sentencing court to vacate, set aside or correct the restitution order.[15] Instead, he has raised this claim, *for the first time*, in this § 2241 habeas action.

Importantly, Petitioner is challenging *only* the BOP's authority to impose a restitution payment schedule and to collect payments pursuant to that schedule. He is *not* challenging the BOP's decision setting the amount or timing of the payments of restitution, or the method used to collect those payments. Thus, he is requesting

---

[15]Petitioner filed a § 2255 motion in the Western District of Tennessee, but raised no claims challenging the validity of the restitution order. The sentencing court denied the § 2255 motion, the Sixth Circuit denied Petitioner's application for a certificate of appealability, and the United States Supreme Court denied his petition for writ of certiorari. *Namer v. USA*, No. 2:08CV02437-BBD-cgc (W.D. Tenn. Aug. 23, 2011), *certificate of appealability denied*, No. 11-6087 (6th Cir. July 20, 2012), *cert. denied*, No. 12-7298 (U.S. Jan. 8, 2013) (electronically accessed).

this Court, as a matter of first impression, to rule on the validity of the restitution order imposed by the sentencing court, even though neither that court nor the Sixth Circuit has ever had an opportunity to consider the matter. Under well-established Eighth Circuit case law, this Court is barred from reaching the merits of that issue.

First, a challenge to the validity of a federal conviction and sentence generally must be made in the sentencing court through a 28 U.S.C. § 2255 motion to vacate, set aside or correct. *Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010); *see* 28 U.S.C. § 2255(a) (a federal prisoner "may move the court which imposed the sentence" to vacate, set aside or correct the sentence). Because a § 2255 motion attacks the *validity* of the conviction or sentence, it is "a further step in the movant's criminal case," and subject matter jurisdiction lies with the court which convicted and sentenced him. *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1986); *Thompson v. Smith*, 719 F.2d 938, 940 (8th Cir. 1983). In contrast, a § 2241 habeas corpus petition is intended to be used by a prisoner to challenge the *execution* of a sentence, or the manner in which it is being carried out, and must be initiated in the judicial district where the prisoner is incarcerated. *Nichols v. Symmes*, 553 F.3d 647, 649 (8th Cir. 2009); *DeSimone*, 805 F.2d at 323.

A court in the district of incarceration can only entertain a § 2241 habeas petition challenging the validity of a conviction or sentence if "*the remedy by [§*

*2255] motion [to the sentencing court] is inadequate or ineffective* to test the legality of his detention." § 2255(e) (emphasis added). It is the petitioner's burden to demonstrate the inadequacy or ineffectiveness of seeking § 2255 relief from the sentencing court. *Lopez-Lopez*, 590 F.3d at 907. The Eighth Circuit has held that: (1) the "inadequate or ineffective remedy" exception is a "narrowly-circumscribed 'safety valve,'" *United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1061-62 (8th Cir. 2002); and (2) even if a § 2255 motion would be barred as successive or untimely, that fact does *not* make the § 2255 remedy "inadequate or ineffective." *Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004).

Second, a § 2241 petition in the district of incarceration cannot be used to raise an issue which *could have been raised* in a direct appeal or a timely § 2255 motion in the sentencing district. *Nichols*, 553 F.3d at 650; *Hill v. Morrison*, 349 F.3d 1089, 1092 (8th Cir. 2003); *United States v. Lurie*, 207 F.3d 1075, 1077-78 (8th Cir. 2000). Petitioner did not challenge the restitution order: (1) in his direct appeal to the Sixth Circuit; (2) in a § 2255 motion in the sentencing district; or (3) in a request to the Sixth Circuit to file a successive § 2255 motion. His failure to pursue these proper procedural avenues for presenting his claim does *not* render § 2255 inadequate or ineffective. *See Abdullah*, 392 F.3d at 963 (petitioner's "failure to seize that opportunity does not render § 2255 inadequate or ineffective"); *Hill*, 349 F.3d at 1092

(§ 2255 not inadequate or ineffective where petitioner had "at least two opportunities to raise [his] argument before the sentencing district"); *Lurie*, 207 F.3d at 1077-78 (§ 2255 not inadequate because all claims asserted could have been maintained in a timely § 2255 motion or on direct appeal). These cases make it clear that, absent extraordinary circumstances that are *not* present in this case, § 2241 cannot be used as a vehicle for challenging the validity of any aspect of a prisoner's sentence, including his obligation to make restitution.

Finally, in *Matheny v. Morrison*, 307 F.3d 709 (8th Cir. 2002), the Court explicitly addressed and rejected the identical argument that Petitioner is making here. In that case, the sentencing court had ordered that restitution was due immediately and gave special instructions regarding the amount of the payments that would be required during the petitioner's supervised release. However, the sentencing court did not specify the amount of payments the petitioner would be required to make during his incarceration. The petitioner filed a § 2241 habeas action in the court of incarceration – not with the sentencing court. He requested the court of incarceration to prohibit the BOP from collecting the $25 monthly restitution payments it imposed during his incarceration on the grounds that: (1) it violated the sentencing court's restitution payment schedule; and (2) it violated Article III of the United States Constitution because the sentencing court's silence on the amount of

restitution the petitioner should make during his incarceration was tantamount to delegating that judicial authority to the BOP. *Id.* at 711.

The Eighth Circuit held that the petitioner's second claim – that the court's restitution order amounted to an unconstitutional delegation of power – was a direct attack on the validity of his sentence and thus was a claim that "must be brought through a § 2255 claim in [the petitioner's] sentencing district."[16] *Id.*; *see also Alevras v. Snyder*, 205 F.3d 1344, *1 (8th Cir. 1999) (unpub. table op.) (federal prisoner's § 2241 claim that the BOP was illegally setting the amount and timing of restitution

---

[16]In *Matheny*, the Court went on to expressly approve the BOP's authority to collect restitution payments through the IFRP:

> [The petitioner's] Schedule of Payments form indicates that his restitution was due in full immediately, with the special instructions for any unpaid amount that remained during his period of supervised release. ... His Schedule of Payments form also states that payments were expected during his incarceration, and that IFRP was a contemplated payee.
>
> It is evident that both appellants were instructed to begin to make payments immediately. The immediate payment directive is generally interpreted to require "payment to the extent that the defendant can make it in good faith, beginning immediately." ... We therefore hold that it is within the BOP's discretion to place appellants in the IFRP payment plan.

*Matheny*, 307 F.3d at 712 (citation omitted).

The sentencing court expressly stated that Petitioner's restitution payments were "due and payable immediately." Thus, under *Matheny*, the BOP had the authority to place Petitioner in the IFRP payment plan and collect payments on his restitution obligation, as imposed by the sentencing court.

payments was "an attack on the legality of the sentencing court's decision to delegate authority to the BOP" and "may require interpreting the sentencing court's order, which is a task best left to the sentencing court" and can be raised only through a § 2255 motion in the sentencing district). Consistent with the Court's holding in *Matheny*, Petitioner's challenge to the BOP's authority to impose a restitution payment plan must be brought in a § 2255 motion filed with the sentencing court in the Western District of Tennessee.

For all the foregoing reasons, this Court lacks jurisdiction to consider Petitioner's second habeas claim.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

(1)     Petitioner's habeas claim challenging his October 5, 2011 disciplinary conviction be DISMISSED with prejudice, and his habeas claim challenging the imposition and collection of restitution payments during his incarceration be DISMISSED without prejudice;

(2)     This § 2241 habeas Petition (docket entries #2, #7) be DISMISSED; and

(3)     All pending motions[17] be denied as moot.

DATED this 8th day of March, 2013.


_____
UNITED STATES MAGISTRATE JUDGE

---

[17]Petitioner's Motion for Discovery and Medical Examination (docket entry #15); Petitioner's Motion for Hearing (docket entry #21).

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## MEMPHIS DIVISION

**UNITED STATES OF AMERICA**

-v-                                              2:00CR20176-01-D

**DAVID I. NAMER**

<u>David W. Camp, CJA</u>
**Defense Attorney**
**403 N. Parkway**
**Jackson, TN 38305**

---

### REDACTED *A*M*E*N*D*E*D* JUDGMENT IN A CRIMINAL CASE
#### (For Offenses Committed On or After November 1, 1987)

The defendant was found guilty on Counts 1-90 and 92-94 of the Indictment on August 20, 2002.  Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| <u>Title & Section</u> | <u>Nature of Offense</u> | <u>Date Offense Concluded</u> | <u>Count Number(s)</u> |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Commit Securities Fraud, Wire Fraud and Mail Fraud | 1996 | 1 |
| 15 U.S.C. §§ 77q(a) & 77x and 18 U.S.C. § 2 | Securities Fraud and Aiding and Abetting | 02/01/1997 | 2-6 |
| 18 U.S.C. §§ 1341 & 2 | Mail Fraud and Aiding and Abetting | 4/01/1996 | 7-10, 23, 29, 30 |
| 18 U.S.C. §§ 1341 & 2 | Mail Fraud and Aiding and Abetting | 10/01/1996 | 11-15 |
| 18 U.S.C. §§ 1343 & 2 | Wire Fraud and Aiding and Abetting | 04/18/1996 | 16-21, 24-28, 31-34, 37-39 |
| 18 U.S.C. §§ 1343 & 2 | Wire Fraud and Aiding and Abetting | 08/14/1996 | 22, 35-36, 40-49 |
| 18 U.S.C. § 1956(h) | Money Laundering Conspiracy | February 1994 | 50 |
| 18 U.S.C. §§ 1956 (a)(1)(A)(i) & 2 | Money Laundering and Aiding and Abetting | 04/22/1996 | 51-63, 71-76, 79-82 |
| 18 U.S.C. §§ 1956(a)(1)(A)(i) & 2 | Money Laundering and Aiding and Abetting | 08/08/1996 | 64-70, 77-78, 83-84 |

EXHIBIT 1

Case No: 2:00CR20176-01   Defendant Name: David I. NAMER

Page 2 of 7

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. §§ 1957 & 2 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 04/16/1996 | 85 |
| 18 U.S.C. §§ 1957 & 2 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 08/09/1996 | 86-90 |
| 26 U.S.C. § 7201 | Tax Evasion | 05/24/1995 | 92 |
| 26 U.S.C. § 7201 | Tax Evasion | 09/02/1997 | 93-94 |
| 18 U.S.C. § 982(a)(1) | Forfeiture | | 95 |

The defendant is sentenced as provided in the following pages of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984 and the Mandatory Victims Restitution Act of 1996

**IT IS FURTHER ORDERED** that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.

Date of Imposition of Sentence:
May 06, 2003
Date of Imposition of Amended Sentence:
July 06, 2007

s/Bernice B. Donald
BERNICE B. DONALD
UNITED STATES DISTRICT JUDGE

July 31, 2007

Case No: 2:00CR20176-01   Defendant Name: David I. NAMER

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of *TOTAL TERM OF 240 MONTHS* **- Count 1 - 60 months, Counts 2-6 - 60 months, Counts 11-15 - 240 months, Counts 16-21, 24-28, 31-34, 37-39 - 240 months, Counts 7, 10, 23, 29, 30 - 240 months, Counts 8-9, 12-14, 22, 35-36, 40-49 - 240 months, Count 50 - 240 months, Counts 51-63, 71-76, 79-82 - 240 months, Counts 64-70, 77-78, 83-84 - 240 months, Count 85 - 120 months, Counts 86-90 - 120 months, Count 92 - 60 months, Counts 93-94 - 60 months all counts to run concurrently with each other**.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at_____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By:_____
Deputy U.S. Marshal

Case No: 2:00CR20176-01   Defendant Name: David I. NAMER

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **\*3 years on all counts to run concurrently to each other**.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

While on supervised release, the defendant shall not commit another federal, state or local crime and shall not possess a firearm, ammunition, or destructive device as defined in 18 U.S.C. § 921.

The defendant shall comply with the following standard conditions that have been adopted by this court.

## STANDARD CONDITIONS OF SUPERVISION

1.    The defendant shall not leave the judicial district without the permission of the court or probation officer;

2.    The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3.    The defendant shall answer truthful all inquiries by the probation officer and follow the instructions of the probation officer;

4.    The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

5.    The defendant shall notify the probation officer **ten(10) days prior** to any change in residence or employment;

6.    The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician, and shall submit to periodic urinalysis tests as directed by the probation officer to determine the use of any controlled substance;

7.    The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

8.    The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

9.    The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

10.   The defendant shall notify the probation officer within **72 hours** of being arrested or questioned by a law enforcement officer;

11.   The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

Case No: 2:00CR20176-01   Defendant Name: David I. NAMER                    Page 5 of 7

12.   As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

13.   If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

## ADDITIONAL CONDITIONS OF SUPERVISED RELEASE

The defendant shall also comply with the following additional conditions of supervised release:

1.   The defendant shall provide the Probation Officer access to any requested financial information.

2.   The defendant is prohibited from being involved in the Security Business.

3.   *The defendant shall not engage in any employment that deals directly or indirectly with obtaining financing, loans, or investing of third party funds. Also, the defendant shall no engage in any financial advisors position or serve as the officer or control person of any corporation.

4.   The defendant shall disclose prior conviction to anyone he is engaged in business with.

5.   The defendant shall seek and maintain full-time lawful employment.

6.   *The defendant shall cooperate with DNA collection as directed by the Probation Officer.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in the Schedule of Payments.  The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options in the Schedule of Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

| Total Assessment | Total Fine | Total Restitution |
|:---:|:---:|:---:|
| $6,800.00 | | $32,720,000.00 |

The Special Assessment shall be due immediately.

Case No: 2:00CR20176-01   Defendant Name: David I. NAMER                    Page 6 of 7

## FINE
No fine imposed.

## RESTITUTION
$32,720,000.00

## FORFEITURE

Accordingly, it is ORDERED:

Based upon the jury's verdict as to Counts 1-90 and 92-94 of Indictment Number 00-20176-D, the United States is authorized to seize the following property belonging to defendant David I. Namer, and his interest in it is hereby forfeited to the United States for disposition in accordance with the law, subject to the provisions of 21 U.S.C. § 853(n) and Rule 32(d)(2) of the Federal Rules of Criminal Procedure:

A.  The sum of Thirty Four Million Six Hundred Fifty Thousand Dollars ($34,650,000.00)
B.  Proceeds from the sale of One Parcel of Real Property located at 5600 St. Joseph Fairway, Memphis, Tennessee 38120; that is, one hundred ninety-seven thousand two hundred forty-two dollars, eighty-four cents ($197,242.84) currently held in Union Planters National Bank Account #3500136654, together with any and all interest accrued thereon;
C.  All shares and any other financial interest held either directly or indirectly by David I. Namer in Meyers Pollock Robbins Inc.

Case No: 2:00CR20176-01   Defendant Name: David I. NAMER                 Page 7 of 7


Deft's U.S. Marshal No.:    15869-034

FILED BY _____ D.C.

03 JUL 25  AM 8: 31

Robert R. Di Trolio
CLERK, U.S. DIST. CT.
W.D. OF TN. MEMPHIS

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

------------------------------------------------------------

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
      VS.                          )      NO. 00-20176-D
                                   )
DAVID I. NAMER,                    )
                                   )
            Defendant.             )

------------------------------------------------------------

SENTENCING HEARING

BEFORE THE HONORABLE BERNICE B. DONALD, JUDGE

TUESDAY AFTERNOON

MAY 6, 2003

LYNN DUDLEY
OFFICIAL REPORTER
950 FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103

EXHIBIT 2



1  month concurrent sentence, no fine, five years

2  concurrent supervised release, and a one hundred

3  dollar special assessment.

4          On Count 50, the money laundering

5  count, a violation of 18 United States Code,

6  Section 1956(h) that carries a maximum sentence of

7  twenty years.  The court will impose the maximum

8  sentence 248 months or twenty years.

9          There's a five hundred thousand dollar

10  fine cap.  The court will impose no fine in this

11  case because of Mr. Namer's indigency, but will

12  impose a period of three years concurrent

13  supervised release and a one hundred dollar

14  special assessment.

15          Money laundering and aiding and

16  abetting counts 51 through 63, 71 through 76, 79

17  through 82, again there's a twenty year cap with a

18  five hundred thousand dollar or twice the value of

19  the property involved in the transaction.  The

20  court will impose the maximum twenty year sentence

21  concurrent sentence, no fine, three years

22  concurrent supervised release, and a fifty dollar

23  special assessment with respect to each count.

24          On the money laundering counts, aiding

25  and abetting, counts 64 through 70, 77 through 78

350

1  83 through 84 there's a maximum twenty year cap.

2  The court will impose the twenty year sentence, no

3  fine, three years supervised release, and a one

4  hundred dollar special assessment.

5           On Count 85, engaging in -- engaging

6  in monetary transactions and property deprived

7  from specified unlawful activity.  The court will

8  impose -- that has, rather, a ten year cap.  The

9  court will impose a 120 month sentence, no fine,

10  three years concurrent supervised release, and a

11  fifty dollar special assessment.

12           On counts 86 through 90, again

13  engaging in monetary transactions and property

14  derived from specified unlawful activity, a

15  violation of 18 United States Code, Section 1957,

16  and 2, the court will impose a concurrent sentence

17  of 120 months per count, that's a concurrent

18  sentence, no fine, three years supervised release,

19  and a one hundred dollar special assessment.

20           On Count 92, the tax evasion charge, a

21  violation of 26 United States Code, Section 7201,

22  that carries a maximum sentence of five years.

23  The court will impose a five year sentence, which

24  is sixty months, will not impose a fine, but will

25  impose the fifty dollar special assessment.

1        Counts 93 and 94 are tax evasion

2   counts, violations of Title 26 United States Code,

3   Section 7201, the court will impose the maximum

4   five years sentence of 60 months, no fine, the one

5   hundred dollar special assessment?

6        All of the sentences will be allowed

7   to run concurrently one with the other for a total

8   sentence of 350 months, which is roughly slightly

9   in excess of 29 years.

10        The supervised release will be

11   concurrent, the maximum term of supervised release

12   is five years.

13        The court will not impose a fine but

14   there is mandatory restitution required under the

15   guidelines.  The fine range in this case is 25,000

16   to 60 million on the aggregate counts, and again,

17   the court will not impose a fine.

18        The -- the restitution amount that the

19   court -- the Presentence Report showed thirty-two

20   million seven twenty, but I believe that that

21   needs to be reduced by $66,300, is that right,

22   Ms. Green, or have you already done the

23   calculation?

24        **THE PROBATION OFFICER:**  No, Your

25   Honor, the sixty-six thousand was reduced from the

1  value but the loss remains at 32 million.

2      **THE COURT:**  Okay.  I am aware that

3  given the length of the -- the sentence that the

4  court is imposing with respect to Mr. Namer, and

5  given his age it is unlikely that he will be able

6  to make full restitution, but the court is going

7  to impose that restitution.  And once Mr. Namer

8  gets out, the Probation Department will monitor

9  his ability to pay, and after he's gotten out and

10 served his supervised release, he can work with

11 probation and can petition the court to adjust

12 that in the event that the court finds that he is

13 unable to pay that amount of restitution.  But the

14 court is going to impose that restitution and make

15 that due and payable immediately.

16      Based on the special assessments that

17 are imposed per count, those total assessments

18 show to be $6,800 in the aggregate, and so that is

19 the assessment.

20      With respect to conditions of

21 supervised release, Mr. Namer, as a condition of

22 supervised release you are prohibited from working

23 at any kind of securities business, but I suspect

24 that that would be regulatory prohibited even if

25 the court didn't make that a requirement.